UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
CHRISTOPHER M. MURPHY, on Behalf
of Himself and All Other Residents and/or
Property Owners in the City of Elmira, Si-
milarly Situated or Aggrieved,

              Plaintiff

              vs.

THE CITY OF ELMIRA, WILLIAM R.
WHEELER, Individually and in his Offi-
cial Capacity as the Fire Marshall for the
City of Elmira, PAUL TOMISMAN and
MILTON G. OAKES, JR., Individually
and in their Official Capacities as Code
Enforcement Officers for the City of El-
mira, Jointly and Severally,

             Defendants
--------------------------------------------------------X

**COMPLAINT**

Case Number:

# 10  Cv  6075 T



Plaintiff, Christopher M. Murphy, complaining of the Defendants above-named,

as and for his Complaint, respectfully alleges and shows to this Court as follows:

## JURISDICTION & VENUE

(1) This action arises under the Constitution of the United States and, more par-

ticularly, the Due Process Clause of the Fourteenth Amendment thereto (U.S.Const.,

Amend. XIV § 1), as well as federal statutory law and, more particularly, the Civil

Rights Act, Title 42 of United States Code (42 U.S.C. § 1983).

(2) Based upon the foregoing, this Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1343(a)(1), 1343(a)(3) and 1343(a)(4).

(3) Federal declaratory relief is requested pursuant to 28 U.S.C. § 2201, 2202.

(4) Venue in the Western District of New York is proper and appropriate under 28 U.S.C. § 1408(1) and 28 U.S.C. § 1391(b).

(5) This action is brought as a putative class action, authorized under 28 U.S.C. § 216(b). Class action certification will be timely requested, pursuant to Fed.R.Civ.Pr., Rule 23.

## THE PARTIES

(6) At all times hereinafter mentioned, Plaintiff, Christopher M. Murphy, was and he now is a resident of the City of Elmira, County of Chemung and State of New York. Plaintiff resides at 757 Linden Place in the City of Elmira and is the owner of this property in fee simple absolute.

(7) The Defendant City of Elmira is a municipal corporation and political sub-division of the State of New York, duly established, organized and existing under the laws of the State of New York and situated within the County of Chemung.

(8) Upon information and belief, at all times hereinafter mentioned, the Defendant William R. Wheeler was, and he now is, the Fire Marshal of the City of Elmira.

(9) Upon information and belief, at all times hereinafter mentioned, the Defendants Milton Oakes and Paul Tomisman were, and they now are, Code Enforcement

-2-

Officers for the City of Elmira.

(10) Upon information and belief, the job responsibilities of Defendants Oakes
and Tomisman include, inter alia, enforcement of those provisions of the Code of Ordi-
nances of the City of Elmira, dealing with residential real property within the City of El-
mira, and more particularly, with the enforcement of Section 22-7, as amended, of the
Code of Ordinances.

## AS AND FOR A FIRST CAUSE OF ACTION

(13) On or about June 18, 2004, the Defendants Milton Oakes and Paul Tomis-
man, together with other employees, officials, officers or agents of the City of Elmira,
acting on behalf of the City of Elmira, removed certain valuable items of personal pro-
perty from Plaintiff's residence, located at 757 Linden Place, in the City of Elmira, in-
cluding, but not limited to, valuable lumber, brand-new roofing shingles in the original
packaging or bundles, a washing machine that was almost brand new and which was en-
tirely operable, a sofa and other items.

(14) At the time Defendants removed these items, they were all neatly stacked,
stored and maintained under a large tarp on Plaintiff's back patio, which has a cement
floor and which is enclosed by a canopy.

(15) Upon information and belief, following the removal of this valuable per-
sonal property from Plaintiff's residence, the Defendants immediately or almost imme-
diately disposed of it or caused it to be disposed of at the Elmira City dump or landfill.

-3-

(16) Thereafter, Plaintiff received a bill from the City of Elmira, demanding payment of One Thousand and Nineteen & 43/100 ($1,019.43) Dollars, purportedly to reimburse the City of Elmira for the cost or expense of removing and disposing of the items which were removed from Plaintiff's patio by the Code Enforcement officers and/or other employees or agents of the Defendant City of Elmira.

(17) Plaintiff failed to pay the aforementioned amount to the City of Elmira within the thirty (30) days specified in the bill sent to Plaintiff, so, upon information and belief, the Defendant City of Elmira imposed a lien on Plaintiff's real property corresponding to and in the full amount of the charges claimed by the City and these charges were also added to Plaintiff's property tax bill with regard to this real property.

(18) Upon information and belief, the aforementioned lien which the Defendant City of Elmira caused to be placed against the Plaintiff's real property remains in force and effect, to the substantial detriment and prejudice of the Plaintiff.

(19) Upon information and belief, the additional charges which the Defendant City of Elmira added to Plaintiff's property tax bill remain thereon.

(20) Upon information and belief, any and all claims, demands, etc., based upon, involving or related to these alleged claims, charges, violations, etc., were assigned to the County of Chemung and it is presently the County of Chemung that holds or owns them; upon information and belief, any lien on Plaintiff's real property is held by or in the name of the County of Chemung.

(21) Upon information and belief, it is the Chemung County Treasurer who en-

-4-

forces any such claims, charges, demands, etc., and/or brings any and all actions or pro-

ceedings to enforce any such liens.

(22) This being the case, upon information and belief, it might well be the Coun-

ty of Chemung and the Chemung County Treasurer who are the real parties in interest as

to certain claims, causes of action, matters, issues, etc., herein set forth, at least insofar as

the Plaintiff himself is concerned.

(23) Upon information and belief, the actions of Defendants Oakes and Tomis-

man and/or other employees, officials, officers or agents of the Defendant City of Elmi-

ra were purportedly taken under, and/or purportedly authorized by and under, Section

22-7 of the Code of Ordinances of the City of Elmira.

(24) Prior to the time(s) at which Defendants Oakes and Tomisman removed the

aforementioned personal property from Plaintiff's patio and residence, he inquired of one

of them as to what the legal basis, ground or justification was for confiscating and/or re-

moving the same from privately owned real property.

(25) In response to Plaintiff's question, said Defendant advised him that the City

was acting pursuant to Section 22-7 of the Code of Ordinances.

(26) Plaintiff asked to see a copy of that section or provision of the Code of Ordi-

nances and Defendant advised him that he would have to go over to the City Clerk's Of-

fice to examine that section or provision.

(27) Plaintiff thereupon went over to the City Clerk's Office and examined

Section 22-7 - and the version thereof that was in the Book of Ordinances at that

-5-

time was and is the one of which a copy is annexed as Exhibit A.

(28) Plaintiff expressly inquired of the woman at the City Clerk's Office, who appeared to be in charge of said office at that time, as to whether the ordinance provision(s) in the Book of Ordinances was up-to-date, and she advised him that it was or they were, indeed, up-to-date.

(29) Nonetheless, a review of that section or version of the Ordinance (Exhibit A) will point up the fact that it does not authorize Defendant City of Elmira to remove or order the removal of any of the items that Defendants Oakes and Tomisman and/or other employees or agents of the City of Elmira removed from Plaintiff's patio.

(30) Otherwise stated, based upon Plaintiff's examination, review and reading of the version of Section 22-7 on file and maintained for public inspection at the Elmira City Clerk's Office, he reasonably, fairly, understandably and justifiably inferred, assumed and believed that all of the items of personal property present on his patio could lawfully be kept, stored and/or maintained there and that neither Defendant City of Elmira nor any of its officials, officers, employees or agents had any lawful power or authority to remove or confiscate any of said items or to order or direct the removal thereof.

(31) Plaintiff relied upon that fact - i.e., the wording and provisions of the version of Section 22-7 that was on file in the City Clerk's Office - and he was justified in such reliance.

(32) Unbeknownst to Plaintiff, and contrary to the statement(s) or assurance(s)

-6-

of the woman employed at the City Clerk's Office,  Section 22-7 of the Code of Ordinances of the City of Elmira was amended on or about March 27, 2000 (a copy of that amended version is annexed as Exhibit B); and amended again on or about May 22, 2000 (a copy of that amended version is annexed as Exhibit C).

(33) Under both amended versions of Section 22-7 (Exhibits B and C), the City would be authorized to remove or order the removal of the items of personal property taken away from Plaintiff's patio, at least insofar as the literal wording and provisions of those ordinance sections is concerned.

(34) Nonetheless, neither of the amended versions of Section 22-7 were on record or on file in the City Clerk's Office when Plaintiff went there to examine the ordinance - which, as aforesaid, he did at the suggestion and instance of Defendant Oakes or Defendant Tomisman.

(35) Indeed, Plaintiff learned of the fact that Section 22-7 had been amended, and that the version thereof on file in the City Clerk's Office, and maintained by and in said office for inspection by the general public, and incorporated into the Book of Ordinances maintained by and at the City Clerk's Office, was no longer valid or in force or in effect, only by happenstance and only more than two years after the events hereinbefore described and set forth.

(36) The difference between the original version of Section 22-7 on file and on record in the City Clerk's Office (Exhibit A) and both amended versions thereof (Exhibits B and C) was and is substantial, crucial and controlling for purposes of this action,

-7-

at least in that, pursuant to the former, the City of Elmira did not have the power or authority to remove or order the removal of the personal property on Plaintiff's patio, whereas, pursuant to the latter, the City of Elmira did have the power or authority to remove or order the removal of the personal property on Plaintiff's patio, at least insofar as the literal wording and provisions of the ordinance section itself was concerned.

(37) Upon information and belief, Defendants Tomisman and Oakes both either knew or clearly should have known that the version of Section 22-7 on file in the City Clerk's Office and incorporated into the Book of Ordinances maintained for public inspection in that office (Exhibit A) was outdated and had been superseded by two amended versions thereof (Exhibits B and C), and that the differences between the former and the latter were substantial, crucial and controlling, as hereinbefore set forth.

(38) Upon information and belief, Defendants Tomisman and Oakes either knew or clearly should have known that Plaintiff would rely upon their statements, advice and direction(s) in the foregoing regard.

(39) Plaintiff did, in fact, rely upon the statements, advice and directions(s) of Defendant Oakes and/or Defendant Tomisman in the foregoing regard, and relied thereon and otherwise acted in good faith in this regard.

(40) Plaintiff lacked knowledge or awareness as to the true or actual facts regarding the ordinance sections, as hereinbefore set forth or alluded to; said lack of knowledge or awareness on the part of Plaintiff in this regard was reasonable and understandable in this regard.

-8-

(41) Plaintiff was reasonably justified in relying and acting upon the statements, advice and direction(s) on the part of Defendant Oakes and/or Defendant Tomisman in the foregoing regard.

(42) Plaintiff was reasonably justified in relying and acting upon the representations, information and assurances furnished to him by the woman employed by Defendant City of Elmira and working in the Elmira City Clerk's Office at the time in question.

(43) Plaintiff did, in fact, rely upon the statements, advice and direction(s) on the part of Defendant Oakes and/or Defendant Tomisman, and upon the representations, information and assurances furnished to him by the woman employed by Defendant City of Elmira and working in the Elmira City Clerk's Office at the time in question, and did so to his clear and substantial detriment and prejudice, as herein set forth.

(44) If Plaintiff had been aware or advised of the fact that Section 22-7 had been amended and that the amended version(s) thereof (Exhibits B and C) differed substantially from the unamended version thereof (Exhibit A) on file in the Elmira City Clerk's Office in the foregoing respects, he would have acted in a very different fashion with respect to the matters and events herein described and, more particularly and at the very least, he would have made sure that none of the items of personal property removed by or at the instance of the Defendant City of Elmira, Defendants Wheeler, Tomisman and/or Oakes, would have been present on his patio at the time(s) in question.

(45) Upon information and belief, Defendant Oakes and/or Defendant Tomisman directed Plaintiff to the Elmira City Clerk's Office for the purpose of inspecting and ex-

amining the provisions of the Ordinance section under which they were proceeding, or purported to proceed, with the clear and conscious awareness and realization that Plaintiff would not only rely and act upon their direction(s) in this regard, but, moreover, that Plaintiff would be misled as to what the law was at the time.

(46) The City of Elmira's official Internet website also expressly states and proclaims that "[r]eview and copies of existing laws and ordinances are available in the City Clerk's Office."

(47) By reason of at least the foregoing, Defendants are estopped from asserting or seeking to assert that Plaintiff was bound by or liable under either of the amended versions of Section 22-7 (Exhibits B and C).

(48) Otherwise stated, Plaintiff's liability is limited to those acts or omissions that would render him liable under the original version of Section 22-7 (Exhibit A), and the Defendants and all of said Defendants are estopped from asserting otherwise and from seeking or attempting to assert that Plaintiff's liability should be based upon, measured or guaged by any of the provisions of either of the amended versions of the ordinance (Exhibit B and Exhibit C), insofar as the language or provisions of the former differ from the language or provisions of the latter in any material, substantial or controlling respect.

(49) In other words, Plaintiff acted dilligently and in good faith to find out what the law was and what his rights and obligations were under that law - and he should not justly or properly be penalized or prejudiced in any way by reason of the fact that there turned out to be two amended versions of Section 22-7, which he had no way of know-

ing about; to hold or rule otherwise would be wholly incompatible with and clearly vio-

late rights and protections embodied in the Due Process Clause and/or the Equal Pro-

tection Clause of the Fourteenth Amendment to the United States Constitution (U.S.

Const., Amend. XIV § 1).

## AS AND FOR A SECOND CAUSE OF ACTION

(50) At all times herein mentioned, and in particular at the time that his valuable

personal property was unlawfully and wrongfully confiscated and carted away by the De-

fendants on or about June 18, 2004, Plaintiff was lawfully and properly using and enjoy-

his own private property - and doing so in all respects in a manner well within the pro-

tection of the Due Process Clause of the Fourteenth Amendment to the United States

Constitution.

(51) The actions of Defendants Oakes and Tomisman and/or other employees,

officials, officers and/or agents of the City of Elmira in removing the aforementioned

items of personal property from Plaintiff's patio were unlawful, wrongful and wholly

unjustified - and clearly represented a deliberate and substantial violation of Plaintiff's

right to the lawful, reasonable and proper use and enjoyment of his private property, as

guaranteed under the Due Process Clause of the Fourteenth Amendment to the United

States Constitution.

(52) Plaintiff has no adequate or meaningful remedy under the laws of the State

-11-

of New York and is thereby constrained to seek any and all relief or remedies in federal court.

(53) All of the acts and practices of Defendants Walker, Oakes and Tomisman and all other employees, officials, officers and/or other agents of Defendant City of Elmira, as herein alleged, were all taken and performed under color of law, and therefore represent and constitute acts of the State and/or its municipal subdivision, within the meaning of the Fourteenth Amendment to the United States Constitution.

(52) Upon information and belief, all of the acts of Defendants Walker, Oakes and Tomisman were also taken pursuant to official policies and/or customs of the City of Elmira, which official policies and/or customs were and are well-established and recognized by officials, officers and/or other employees of the City of Elmira who are officially charged with the enforcement of any and all violations or purported violations of the applicable provisions of the Code of Ordinances of the City of Elmira.

(53) Upon information and belief, the aforementioned policies and/or customs were established or adopted by officials of the City of Elmira who are authorized by law and responsible for making official policy with regard to the matters involved here and/or which were and are well known to them and ratified or approved by them in connection with the practices and actions engaged in by Code Enforcement officers and/or all other City officers, officials, employees and/or agents charged with the handling of these cases and with the enforcement of the provisions of Section 22-7, as amended, of the Elmira Code of Ordinances.

-12-

(54) Upon information and belief, the Defendant William R. Wheeler, acting in his official capacity as the Fire Marshall of the City of Elmira, is officially authorized to make and adopt such policies and/or customs with regard to the manner in which Elmira City Code Enforcement officers and/or other employees of the City of Elmira officially charged with the enforcement of the Code of Ordinances of the City of Elmira conduct and handle such actions in the discharge of their lawful duties.

(55) Upon information and belief, the Defendant William R. Wheeler, as the Fire Marshal of and for the Defendant City of Elmira, is responsible for the acts of the Defendants Milton Oakes and Paul Tomisman while the latter are engaged in the performance of their official duties as Code Enforcement officers for the Defendant City of Elmira.

(56) Upon information and belief, no officer, employee or agent similarly situated to the Defendants Walker, Oakes and Tomisman in this case would fairly, reasonably or legitimately believe that the actions herein complained of on their part might reasonably be lawful, justified or authorized under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

(57) Otherwise stated, further upon information and belief, any reasonable state or municipal official, officer, employee or agent charged with the enforcement of the provisions of Section 22-7 of the Elmira Code of Ordinances, as amended, on a regular basis, would certainly know and recognize that the actions of these Defendants, as herein complained of, were and are unquestionably unlawful and constitute clear and substantial vio-

-13-

lation of property rights and interests within the protections and guarantees embodied in the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## AS AND FOR A THIRD CAUSE OF ACTION

(58) Section 22-7 of the Elmira Code of Ordinances, as amended, violates *on its face* the Due Process Clause of the Fourteenth Amendment to the United States Constitution in that, as worded, it constitutes an unlawful interference with the lawful and proper use and enjoyment of private property and it lacks any reasonable connection with any legitimate governmental object or purpose.

(59) Section 22-7, as amended, as presently worded, purports to authorize and empower the City of Elmira and its Code Enforcement officers and/or other officers, employees and agents of the City of Elmira to enter on to any privately-owned residential, industrial or commercial premises or real property, without permission or consent to do so from the owner or other person in control of or responsible for the premises, and to thereupon confiscate, remove, take away and/or permanently dispose of any and all items of personal property or material(s) described, defined, specified or enumerated in Section 22-7(a)(2) of both amended version of the ordinance (copies of which are hereto annexed as Exhibits B and C respectively), found or located anywhere on any exterior portion of the premises or real property.

(60) Pursuant to Section 22-7(a)(2) of both versions of the amended ordinance, Code Enforcement officers and/or other employees or agents of the City of Elmira are

-14-

authorized and empowered to confiscate, remove, take away and/or permanently dispose
of a veritable laundry list of valuable personal property, including, but certainly not limited to, any and all "household mechanisms or appliances," "construction materials" - as
well as any and all other "large and/or bulky items" found or located anywhere on the
exterior portions of the premises.

(61) Section 22-7(a)(2) of both amended ordinances purports to authorize and
empower Code Enforcement officers and/or any other City employees or agents to confiscate, remove, take away and/or permanently dispose of *any* "large and/or bulky item"
found anywhere on the premises, without any limitation, restriction, condition or qualification - as to the nature or type of item, its purpose or use or its monetary or other value
or worth.

(62) Section 22-7(a)(2) further purports to authorize and empower Code Enforcement officers and/or other employees or agents of the City of Elmira to confiscate,
remove, take away and/or permanently dispose of items of personal property which is
being lawfully and properly used and enjoyed - and confiscation, removal and/or disposal of which is wholly unrelated to any legitimate or accepted governmental object or
purpose.

(63) Section 22-7, as amended, of the Code of Ordinances of the City of Elmira
thus violates *on its face* the Due Process Clause of the Fourteenth Amendment to the
United States Constitution, in that it constitutes an unreasonable, arbitrary, unnecessary
and gratuitous interference with the lawful and proper use and enjoyment of private pro-

-15-

perty by the owners of such property under the mere pretense or guise of a legitimate or permissible exercise or enactment under the police power of the State and its municipal subdivisions.

## AS AND FOR A FOURTH CAUSE OF ACTION

(64) Section 22-7, as amended, violates *on its face* the Due Process Clause of the Fourteenth Amendment to the United States Constitution in that it is void for vagueness, in that it does not convey to individuals of average intelligence what is proscribed or subject to penalty thereunder, so that such individuals may thus govern themselves and their actions accordingly.

(65) For example, Section 22-7(a)(2) of the amended ordinances authorizes and empowers officers, employees and/or agents of Defendant City of Elmira to confiscate, remove, cart off and permanently dispose of any "large and/or bulky items" - which can fairly include just about anything bigger than a bread box.

(66) Section 22-7, as amended, also violates *on its face* the Due Process Clause in that it confers arbitrary and unregulated discretion, power and authority upon City officers, employees and/or agents in enforcing the provisions of the ordinance and makes the use and enjoyment of one's own property dependent upon the arbitrary whim or caprice of the Code Enforcement officers who enforce the ordinance, rather than upon any uniform provisions of the ordinance itself, and invites and encourages discriminatory or selective enforcement.

-16-

(67) By reason of at least the foregoing, Section 22-7, as amended, is *on its face*, void for vagueness and because it encourages or invites arbitrary and invidious application and enforcement of its provisions and thus violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## AS AND FOR A FIFTH CAUSE OF ACTION

(68) Section 22-7 of the Code of Ordinances of the City of Elmira, as amended on or about March 27, 2000 and as also amended on or about May 22, 2000, is invalid and unconstitutional *on its face* under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in that it results in unlawful, arbitrary and wrongful deprivation and loss of valuable personal property in a disproportionately high number of cases, through the actions of Code Enforcement officers and/or other employees or agents of the City of Elmira, because any and all decisions relating to the forfeiture and loss of such property are made unilaterally and in the exercise of unfettered discretion on the part of Code Enforcement officers and/or other employees or agents of the City of Elmira.

(69) No hearing is assured or provided for under any of the provisions of either of the amended versions of Section 22-7, nor is the individual whose valuable property is subject to more or less imminent forfeiture and loss afforded or provided with any meaningful opportunity or means of protecting valuable property within the protection of the Due Process Clause of the Fourteenth Amendment

-17-

(70) As the direct and necessary result of the failure to require or provide for a hearing to be held before any deprivation of valuable personal property or to otherwise make any provision for the protection of individual's valuable personal property against the threat of wrongful deprivation or forfeiture, upon information and belief, the ultimate outcome in a disproportionate and unduly excessive number of these cases arising under Section 22-7, as amended, is that the individuals involved are ultimately subjected to the arbitrary, unreasonable, unlawful, unjustified and unconstitutional deprivation and forfeiture of valuable personal property, which loss is almost always final and irreparable, as a result of the fact that it is taken to the City dump or landfill for disposal immediately or almost immediately following its removal from the property or premises of the individual involved.

(71) Upon information and belief, if provision was made under this procedure or arrangement for a hearing before a competent and impartial court, judge, tribunal, factfinder and/or other decision-maker, upon notice to the individual whose personal property is at risk, *before* any ultimate deprivation or loss of the property, one significant outcome or result would almost certainly be that the City of Elmira would be precluded from confiscating, removing, taking away or otherwise interfering with the property at issue - ' because, upon information and belief, in a very high proportion or percentage of these cases, the City of Elmira has no lawful power or authority to confiscate, remove or interfere with the property which it seeks to confiscate and cart off.

(72) Under the existing procedure and arrangement, the City is successful in its

-18-

efforts in virtually all cases simply because it is well-nigh impossible for the average per-
son to challenge or question the actions taken by the City - and this is almost certainly es-
specially so, inasmuch as the vast majority of these cases involve individuals who are
least able to afford the loss of valuable property and who are probably least able to effec-
tively question or challenge the City's actions, owing to low income, limited education,
fear or paranoia in dealings with the police or other government officers or officials and
things of that general sort.

(73) So too, upon information and belief, yet another very important factor or
consideration with regard to the issues here is the simple fact that these Code Enforce-
ment officers have the power and authority under Section 22-7 to demand payment of
excessive and exorbitant amounts of money for the removal or cure of supposed "viola-
tions" of this ordinance and, more importantly, to clap a lien on your house or home if
you fail or refuse to pay any and all charges, however arbitrary or unreasonable or ex-
cessive, and to tack these charges right on to your property tax bill.

(74) Otherwise stated, the practical consequences of failing or refusing to go
along with the agenda and gameplan of these Code Enforcement officers are typically
draconian - especially for the individuals whom these guys always seem to target for
some sort of enforcement action.  Upon information and belief, the Code Enforcement
officers are very quick to point out the parade of horribles which will inevitably be visit-
ed upon you if you fail or refuse to go along with more or less everything they tell you
to do.

-19-

(75) As properly construed and interpreted, Section 22-7, as amended, might fairly be said to limit and restrict the power and authority of Code Enforcement officers and/or other employees or agents of the City of Elmira entering on to privately-owned premises to the removal and disposal of only items or material(s) which come under the heading or definition of *refuse* or *miscellaneous refuse,* as the term *refuse* is expressly and specifically defined in Section 11-36 of the Code of Ordinances.

(76) Nonetheless, upon information and belief, Code Enforcement officers and others officially charged with the duty of enforcing Section 22-7, as amended, and handling these cases, routinely ignore this limitation upon their lawful power and authority - and instead proceed to apply and enforce the ordinance as if their own lawful authority and power thereunder are more or less absolute and final - and upon information and belief, this is especially the case with regard to their authority, power and prerogatives regarding the items or material(s) which they may confiscate, remove, take away and/or dispose of.

(77) One of the two Code Enforcement officers with whom I personally dealt came right out and openly told (or boasted) to me that *they* (i.e., he and his colleagues) decide what property they will take.

(78) The other Code Enforcement officer with whom I dealt told me that, if something - anything - is outside of your house, it is *junk* - and they will take it away and dispose of it.

(79) Upon information and belief, the inevitable consequence of enforcing the

-20-

provisions of this ordinance in such an arbitrary and capricious manner is the wrongful, unlawful and unreasonable deprivation and forfeiture of valuable personal property that the City of Elmira has no colorable, conceivable or remote power or authority to confiscate, remove or otherwise interfere with when it is located or found on privately-owned premises.

(80) Upon information and belief, under the provisions of Section 22-7, as amended, as applied and enforced by the City of Elmira and its officials, officers, employees and /or agents on a routine and regular basis, individuals are subjected to the wrongful, unlawful and unjust deprivation and forfeiture of valuable personal property, based upon nothing more than the arbitrary whim or caprice of Code Enforcement officers who target them for some sort of official enforcement action pursuant to one or more of the provisions of the ordinance.

(81) Under the procedure mandated and provided for in Section 22-7, as amended, the Code Enforcement officers and/or others charged with the enforcement of the ordinance possess and enjoy absolute, unfettered discretion, authority and power regarding the ultimate disposition of all personal property found on the exterior portions of private property or premises within the City of Elmira.

(82) Upon information and belief, the Code Enforcement officers and/or other City employees, officials or agents who are charged with the enforcement of Section 22-7, as amended, routinely abuse the enormous power which they possess and enjoy under the provisions of this ordinance, routinely resulting in the wrongful, unlawful

-21-

and unjust deprivation and forfeiture of valuable personal property on the part of in-
nocent individuals who are lawfully and properly using and enjoying their own pro-
perty in a manner which is well within the protection of the Fourteenth Amendment.

(83) Based at least the foregoing, it is submitted that Section 22-7, as amended,
and the procedure(s) prescribed and provided for thereunder, clearly and substantially
violate minimal standards of procedural due process, as these are embodied in the Due
Process Clause of the United States Constitution, because, inter alia, no provision is
made thereunder for a hearing prior to any deprivation or forfeiture of personal proper-
ty and the individual whose personal property is at immediate risk is given no meaning-
ful opportunity to defend or protect his property rights or interests.

(84) Minimal standards of procedural due process require that the individual
whose valuable personal property is threatened with forfeiture or loss, which will al-
most always be final and irreparable, be granted a hearing before an impartial decision-
maker, upon due and timely notice of the proceedings, *before* any possible deprivation
or forfeiture of his or her personal property - so as to afford the individual whose per-
sonal property is at risk of forfeiture and loss a meaningful opportunity to question, re-
spond to or challenge any and all material claims on the part of the City and to present
any valid or meritorious claims, defenses, etc., that he or she might have.

(85) Upon information and belief, there are present in these cases no legitimate
or valid circumstances or considerations which might reasonably justify or excuse fail-
ure to provide for and require a hearing *before* any possible deprivation or loss of per-

-22-

sonal property within the protection of the Fourteenth Amendment.

(86) By reason of at least the foregoing, Section 22-7 of the Code of Ordinances of the City of Elmira, as amended, violates *on its face* the Due Process Clause of the Fourteenth Amendment to the United States Constitution, by reason of the fact that the procedure thereunder fails to meet or satisfy minimal standards relating to procedural due process of law.

## AS AND FOR A SIXTH CAUSE OF ACTION

(87) Under the Fifth and Fourteenth Amendments, as interpreted in *Lucas v. South Carolina Coastal Council*, 555 U.S. 1003 (1992), state and local governments have no lawful power or authority to take private property without paying the owner thereof just compensation therefor unless the property is being used or maintained in such a manner as to constitute or create a common law nuisance.

(88) Under Section 22-7, the City of Elmira is purportedly given the lawful power and authority to take and dispose of private personal property, found on privately-owned residential or other real property, without any provision for compensating the owners of such personal property for its deprivation and loss, and without paying any compensation to such owners, wholly without regard to whether the property constitutes or creates a common law nuisance or is being used or maintained in a manner that constitutes a common law nuisance.

(89) Otherwise stated, Section 22-7 purports to empower and authorize the

-23-

City of Elmira to take and dispose of private property without any compensation to its owner even when that property is not being used or maintained in a manner that constitutes a common law nuisance.

(90) Indeed, Section 22-7 purports to empower and authorize the City of Elmira to confiscate, take, remove and dispose of private property - found on privately-owned premises - without compensation merely if the items taken are "large and/ or bulky" and they are located or found on any exterior portion of the premises. It is not even required that the private property is being used or maintained in a manner that would or might justify governmental interference under the police power - this clearly being a far less stringent standard or requirement than common law nuisance.

## AS AND FOR A SEVENTH CAUSE OF ACTION

(87) Section 22-7, as amended, of the Elmira Code of Ordinances also confers upon Code Enforcement officers and/or other City officials or employees charged with the enforcement of the provisions of this section virtually absolute and unfettered discretion, power and authority, with regard to the imposition of charges and costs and expenses upon property owners for the supposed cost of removing any personal property or other material(s), as well as for the supposed cost of mowing or cutting high grass (i.e., any grass over six inches in height).

(88) Section 22-7, as amended, also grants Code Enforcement officers and/or other City officials or employees the same virtually absolute and unfettered discretion, au-

-24-

thority and power to decide the amount of any charges which a property owner or other individual will be required to pay the City when employees of the City enter on to privately owned premises for the purposes of curing or removing some actual or purported "violation" of the ordinance - such as the confiscation, removal, taking away and/or disposing of items or material(s) which Code Enforcement officers deem to constitute "unauthorized material" of one sort or another. The ordinance also confers arbitrary discretion and power upon low-level City employees to determine the amount of charges imposed for cutting or mowing high grass

(89) Upon information and belief, the amount of almost all of these charges, as determined by the Code Enforcement officers and/or other City employees who possess and enjoy more or less absolute discretion and power to come up with more or less any amounts they want, are almost invariably excessive and exorbitant, if not downright outrageous or conscience-shocking.

(90) As a practical matter, the average individual has no real choice or alternative other than to simply pay any and all charges demanded of them by the City, notwithstanding the fact that, upon information and belief, they are inordinately excessive and exorbitant and bear little, if any, reasonable relation to the actual cost or expense incurred by the City for doing the work in question, inasmuch as the inevitable result of failing or refusing to pay them in full and in a timely manner is the imposition of a lien for the charges against your home or house and the addition of the charges to one's property tax bill.

-25-

(91) It is submitted that the procedure for determining and computing the ultimate amount of any and all charges to be imposed by the City against the property owner or other responsible individual under Section 22-7, as amended, and in particular Section 22-7(c) thereof, violates *on its face* the Due Process of the Fourteenth Amendment to the United States Constitution, in that such arrangement or procedure violates accepted standards of procedural due process of law.

(92) It is submitted that minimal standards of procedural due process require that such charges, which are often considerable and substantial by any standard, must be calculated and determined following a hearing before an impartial court, tribunal or other impartial decisionmaker, following timely notice to the individual who will be required to pay them and after affording him or her an opportunity to respond to or challenge the information or evidence presented by the City and to present any information or evidence of his or her own in support or his or her own position.

(93) Such hearing is required in order to determine whether any such charges may properly, permissibly and lawfully imposed upon or shifted to the property owner at all or in the first place, and also, if charges may lawfully and properly be imposed upon or shifted to the property owner by the City, a hearing is required in order to determine the reasonable, necessary, permissible and justified amount thereof.

(93) By reason of at least the foregoing, Section 22-7, as amended, violates *on its face* the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## AS AND FOR A EIGHTH CAUSE OF ACTION

(94) Section 22-7, as amended, is void for "overbreadth" in that on its face and upon the fair and natural meaning and import of its actual language, it clearly purports to prohibit, proscribe, penalize and make unlawful actions which are within the protection of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and/or other provisions of the United States Constitution, such actions not being a permissible subject of government interference or regulation of any kind.

(95) Indeed, Section 22-7, as amended, is so overly broad in its sweep as to penalize and purport to criminalize far more actions and conduct that is within the protection of one or more provisions of the  United States Constitution and thus not permissibly subject to interference or regulation by the City of Elmira or any other governmental entity or agency than it does actions and conduct that it not so constitutionally protected and which is thus properly subject to such governmental regulation, interference, prohibition or penalty.

(96) For one thing, Section 22-7 purports to lawfully authorize and empower the City of Elmira to enter on to any privately-owned premises in that City and confiscate, remove and cart off for disposal any "large and/or bulky item" found on any portion of the exterior premises, without paying the owner of the property any compensation for its deprivation or loss - and to take such action even when there is no colorable, conceivable or remote justification or ground therefor under the police power.

-27-

(96) By reason of the foregoing, both amended versions of Section 22-7 of the Code of Ordinances of the City of Elmira are void as violative *on their face* of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## AS AND FOR A NINTH CAUSE OF ACTION

(97) The actions of Defendants insofar as they involve and/or relate to the Plaintiff in the particular instances hereinbefore complained of violate Plaintiff's fundamental rights and protections under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, in that said Defendants singled out Plaintiff for harsh and discriminatory enforcement or treatment, to the exclusion of all other individuals similarly situated, based exclusively or almost exclusively upon factors, reasons and motives which had no rational or reasonable relation to the provisions of Section 22-7 of the Elmira Code of Ordinances.

(98) Upon information and belief, the enforcement action(s) taken by Defendants against the Plaintiff were motivated in whole or substantial part by the fact that one of Plaintiff's neighbors is very friendly with one or more of the Code Enforcement officers for the City of Elmira and that said neighbor contacted such officer(s) and instigated and urged that they target Plaintiff for some sort of enforcement action, notwithstanding the fact that said neighbor knew or should reasonably have known that there were no Code violations on Murphy's property.

(99) Upon information and belief, the motives of Plaintiff's neighbor in contact-

-28-

items were visible or apparent to anyone without first removing or lifting said tarp.

(103) At no time did any of the City Code Enforcement officers or any other City employees have Plaintiff's permission or consent to enter on to any portion of his real property premises.

(104) Upon information and belief, none of the City Code Enforcement officers nor any other City employees involved with this situation ever apply for or obtain a warrant to enter on to or to search any portion of his exterior or other premises or to seize any of items of personal property found or located on any portion of his premises, nor did they apply for or obtain any other court order or writ authorizing any of them to enter onto any portion of Plaintiff's premises or to seize any of Plaintiff's personal property.

(105) The actions of the Code Enforcement officers and/or other City employees in entering on to Plaintiff's premises without his permission or consent and without a warrant or any other court order or judicial writ of any kind authorizing them to do so constituted an unreasonable and unlawful search in violation of Plaintiff's rights and protections under the Fourth Amendment to the United States Constitution.

(106) The actions of the Code Enforcement officers and/or other City employees in seizing and carting off Murphy's personal property without a warrant or any other judicial writ or court order authorizing them to do so constituted an unreasonable and unlawful seizure of Plaintiff's personal property in violation of his rights and protections under the Fourth Amendment to the United States Constitution.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

(107) Quite apart from the foregoing, the City of Elmira's failure or refusal to file and record a copy or original of either of the amended versions of Section 22-7 (both of which were adopted, promulgated and passed by City Council no less than ten years ago) in the official and lawful repository of and for all local laws and ordinances (to wit, the Office of the City Clerk of the City of Elmira), so as to make the ordinance available for public inspection upon demand by anyone who chooses to examine it renders both amended versions of the ordinance invalid, unconstitutional and unenforceable.

(108) The official website of the City of Elmira proclaims that "[r]eview and copies of existing laws and ordinances are available in the City Clerk's Office."

(109) Section 1-9 of the Code of Ordinances of the City of Elmira states that "[a]ll ordinances passed by the [Elmira City] council shall be recorded by the city clerk in a proper book or books, with indexes."

(110) Section 39 of the Charter of the City of Elmira states that the Elmira City Clerk's office is "hereby declared a town clerk's office for the purpose of depositing and filing therein all books and papers required by law to be filed in the town clerk's office."

(111) New York Town Law § 30 requires that all local laws and ordinances be filed and maintained in the Town Clerk's office and made available in that office for public inspection upon demand.

(112) New York Second Class Cities Law § 39 sets forth a similar requirement

-31-

Case 6:10-cv-06075-MAT   Document 1   Filed 02/12/10   Page 31 of 47



in Cities of the Second Class - namely, that the original or copies of any local law or or-

dinance must be filed and maintained in the City Clerk's Office and made available for

public inspection upon demand in that office.

(113) The City of Elmira is not a Second Class City, as the term is defined by

statute, inasmuch as it did not have a population of 50,000 or more as of 1923.

(114) Nonetheless, as aforesaid, Section 39 of the Charter of the City of Elmira

provides that the Elmira City Clerk's office is declared to be a Town Clerk's office with

regard to the filing of all books and papers required by law to be filed in the latter office.

(115) New York courts have consistently ruled that failure to file the original or

a copy of any local law or ordinance in the Town Clerk's office or the City Clerk's office

renders such local law or ordinance void *ab initio*, as a matter of law.

(116) Section 22-7 of the Elmira Code of Ordinances was amended by the City

Council ten years ago and the City has never filed a copy of the amended version in the

Elmira City Clerk's office.

(117) The Book of Ordinances maintained in the Elmira City Clerk's office

and presented to individuals who visit that office to inspect this ordinance contains

the old version of Section 22-7 (Exhibit A) - notwithstanding the fact that the amended

version of Section 22-7 was adopted by the Elmira City Council in the Spring of 2000

or some ten years ago.

(118) Any mistake or confusion resulting from the failure of the City to file a

copy of the amended version of Section 22-7 in the City Clerk's office inevitably

works to the prejudice of individual members of the public in that the amended version of the ordinance (which is withheld from the public) greatly expands the duties, obligations and liability of property owners and residents in comparison to the old version of the ordinance (which is made available to the public in the Book of Ordinances kept in the City Clerk's office).

(119) An individual could be wholly compliant with the law under the old version of Section 22-7 (the public version), yet be in serious violation of the law under the amended version (the version that is not made public) and find himself or herself liable for costly penalties - because Code Enforcement officers in the City of Elmira go by and enforce a wholly different law than the one that is made available to the public.

(120) Upon information and belief, in the vast majority of cases involving this section, the property owner or resident who is targeted for enforcement action by Code Enforcement officers and alleged to be in violation of Section 22-7 will be guilty of such violation only under the amended version of the ordinance - in other words, he or she will be compliant with the law under the old version of Section 22-7.

(121) In other words, upon information and belief, in the vast majority of cases, individuals and their properties will be in violation or alleged to be in violation of only the secret law - and wholly compliant with the law that is made available to the public.

(122) Individuals of ordinary intelligence who exercise reasonable dilligence to discover and know the law would believe and assume that the law is what they find

in the Book of Ordinances shown to them in the City Clerk's office - in other words, the old version of Section 22-7 - and they would be wholly justified in relying upon what they find and read therein.

(123) No person should justly or properly be penalized for his or her mistaken reliance upon the old version of Section 22-7 found in the Book of Ordinances maintained in the City Clerk's office and presented to members of the public who visit that office to inspect the law.

(124) Indeed, it would be unreasonable and unjust to require any individual who was significantly prejudiced as a result of mistaken and misplaced reliance upon the old version of Section 22-7 to plead or prove these facts.

(125) Rather, this Court should justly and properly rule that the City of Elmira's failure to file the amended version of Section 22-7 in the Elmira City Clerk's office for ten years after its adoption by the Elmira City Council renders that ordinance unenforceable and invalid.

(126) As earlier alluded to, such result would be consistent with New York decisional law - but also based upon Fourteenth Amendment grounds. The notion of secret laws that are not discoverable or knowable by individuals of ordinary intelligence in the exercise of reasonable dilligence or care is wholly incompatible with basic notions of fundamental fairness.

-34-

## CLASS ACTION ALLEGATIONS

(127) Plaintiff brings this class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, in his representative capacity on behalf of himself and on behalf of fellow class members similarly situated.

(128) The class herein may be defined, specified and limited more or less as follows: any and all residents, lessees, occupants and/or real property owners within the City of Elmira, from whose real property items of personal property and/or other material have been removed and taken by or on behalf of the Defendant City of Elmira, by any of its employees, officials, officers and/or agents, including Defendants Tomisman and Oakes and/or other Code Enforcement officers employee by Defendant City of Elmira, at any time between on or about May 22, 2000 and the present day, purportedly pursuant to Section 22-7 of the Elmira Code of Ordinances, as amended on or about May 22, 2000; including, but not limited to, such individuals who have suffered the loss of valuable personal property, and/or who have been charged for the removal of such property or material by the City, and/or who have had liens clapped on their property and/or whose tax bills have been increased by such charges; this includes charges for cutting high grass.

(129) Plaintiff meets the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure to bring this class action on behalf of himself and on behalf of his fellow class members because:

-35-

[a] **Numerosity**: upon information and belief, the class is so numerous that the joinder of all of its members is impracticable, in that it includes any and all individuals residing or owning property in the City of Elmira, from whose real property items of personal property or other material has been removed by the City of Elmira by or through its employees, officials, officers and/or agents, pursuant or purportedly pursuant to Section 22-7 of the Elmira Code of Ordinances, as amended on or about May 22, 2000, over the period from that date through the present time, and any and all individuals who have been charged for cutting high grass, so a period of more than eight (8) years and embracing potentially any and all owners, residents, lessees, occupiers, etc.;

[b] **Commonality**: there are common questions of law and fact which are common to all class members, which clearly predominate over any questions of either law or fact peculiar to any individual class members - including, inter alia, the fact that all such class members were subject to action under same section;

[c] **Typicality**: Plaintiff's claims are typical of the class and more or less identical with the vast majority of claims, to a considerable degree, the claims of all class members are based upon the same facts and the same legal theories;

[d] **Adequacy of Representation by Plaintiff**: Plaintiff will fairly, adequately and competently represent the class; his interests and claim(s) are not merely *de minimis* and he would benefit substantially if the relief herein requested is granted to him along with his fellow class members; Plaintiff has enough of a stake in this matter that he will vigorously litigate and pursue this action on behalf of himself and his fellow class

members; the interests of the Plaintiff, as proposed class representative, are neither antagonistic to, nor do they conflict in any way with, those of his fellow class members;

[e] **Superiority of Class Action Approach**: unquestionably, this is a matter especially suited to class action handling and which requires a class action approach, in order to be effective, meaningful and successful in obtaining any and all relief for the class members; in the absence of a class action, it is highly unlikely that the claims of any class members would ever be pursued or vindicated, thus denying them any of the relief to which they are certainly justly and properly entitled to under the law; it is submitted that this fact is clearly attested to simply by virtue of the fact that, upon information and belief, no class member or potential class member has ever brought any action or proceeding in any court or forum against any of the Defendants based upon any of the claims or causes of action or demands herein set forth.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, on behalf of himself and the proposed class of Plaintiffs herein, respectfully requests Judgment as follows:

[a] class certification, pursuant to Rule 23(c) of the Federal Rules of Civil Procedure, of the proposed or putative class hereinbefore specified, upon timely motion for such relief, pursuant to Rule 23(c);

[b] pursuant to the Second Cause of Action hereinbefore stated and set forth, declaring that Section 22-7, as amended, of the Code of Ordinances of the City of

-37-

Elmira violates *on its face* the Due Process Clause of the Fourteenth Amendment to the United States Constitution in that it constitutes an impermissible and unreasonable interference with the lawful and proper use and enjoyment of private property within the protection of the Fourteenth Amendment under the guise of the police power and in the complete absence of any rational, reasonable or meaningful relation to any legitimate police power or other proper governmental purpose or objective;

[c] pursuant to the Third Cause of Action hereinbefore stated and set forth, declaring that Section 22-7, as amended, of the Code of Ordinances of the City of Elmira, violates *on its face* the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States in that its provisions, in pertinent part, fail to furnish to individuals of average intelligence an understandable idea or standard with regard to what is and what is not prohibited or proscribed thereunder, and it is thus void for vagueness and furnishes no uniform rule of action which sets forth standards to control and regulate the officers, employees and/or agents of Defendant City of Elmira, thus leaving the enjoyment of property rights protected under the Fourteenth Amendment to the arbitrary whim and caprice of such officers, employees and/or agents;

[d] pursuant to the Fourth Cause of Action hereinbefore stated and set forth, declaring that Section 22-7, as amended, violates *on its face* the Due Process Clause of the Fourteenth Amendment to the United States Constitution and, more particularly, the rights and protections embodied therein in the nature of procedural due process of law, in that it fails to provide for a meaningful and timely hearing before an

-38-

impartial judge or court of competent jurisdiction, upon due and timely and meaningful

notice to the individual property owner, lessee or occupant, prior to any deprivation or

taking of his or her items of personal property, thus wholly depriving such individuals

of any opportunity to challenge or question the actions of the City or to argue against

the forfeiture or loss of his or her personal property before it is confiscated and perma-

nently and irretrievably disposed of by the City or its officers, employees or agents;

[e] pursuant to the Fifth Cause of Action hereinbefore stated and set

forth, declaring that so much of Section 22-7, as amended, violates *on its face* the Due

Process Clause of the Fourteenth Amendment to the United States Constitution in that

it fails to provide for a meaningful and timely hearing before an impartial judge or court

of competent jurisdiction, upon due and timely notice to the individual property owner,

lessee or occupant, prior to and for the purpose of determining, computing and fixing the

amount of any charges to be imposed against such individuals for the cost of removing or\

curing any violations of any of the provisions of said amended ordinance;

[f] pursuant to the Sixth Cause of Action hereinbefore stated and set forth,

declaring that so much of Section 22-7, as amended, as purports to empower and autho-

rize the City of Elmira to confiscate and dispose of private personal property, taken from

privately-owned premises, even if such property is not being maintained or used in a

manner to create or constitute a common law nuisance and even if there is no justifica-

tion or ground under the police power for such taking, without paying any compensation

whatsoever to the owner of such property for its deprivation and loss, violates *on its face*

-39-

the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

[g] pursuant to the Seventh Cause of Action hereinbefore stated and set forth, declaring that so much of Section 22-7, as amended, as authorizes and empowers City of Elmira Code Enforcement offices and other low-level City employees to, acting in their own arbitrary and unfettered discretion and power, to impose often substantial, if not outrageous costs and charges upon property owners for the supposed cost of re-moving and disposing of personal property taken from privately-owned premises and/or for cutting or mowing high grass on private-owned premises, and to determine as well the ultimate or actual amount of such charges and costs to be imposed upon or shifted to the property, without any provision for a hearing of any kind or any right to request or demand a hearing of any kind at any time, and without holding any such hearing at any time, violates *on its face* the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

[h] pursuant to the Eighth Cause of Action hereinbefore stated and set forth, declaring that so much of Section 22-7, as amended, as purports to authorize and empower the City of Elmira to confiscate and dispose of any "large and/or bulky item" found on any exterior portion of any premises, in the absence of any justification or ground whatsoever under the police power for such taking, violates *on its face* the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

[I] pursuant to the Eleventh Cause of Action herein stated and set forth, declaring that Section 22-7, as amended, is invalid, unenforceable and void, as a mat-

-40-

ter of law, by reason of the failure of the City of Elmira to cause a copy thereof to be filed in the Elmira City Clerk's office and incorporated into the Book of Ordinances maintained by and in that office and made available for public inspection upon demand, as required by and under the Charter of the City of Elmira, the Code of Ordinances of the City of Elmira and New York statutory and decisional law;

[j] awarding and granting to the Plaintiff, Christopher M. Murphy, reasonable and appropriate monetary damages or relief for the injuries sustained by him as the direct and proximate result of the unlawful actions on the part of the Defendants herein, or some of them, in connection with the confiscation and disposal of the items of valuable personal property from his patio at the times hereinbefore specified; and canceling and striking any and all charges or costs imposed upon the Plaintiff by the City, as well as invalidating and expunging any and all liens on Plaintiff's real property imposed by the City in connection therewith;

[j] awarding Plaintiff and all other class members similarly situated monetary damages for the unlawful taking, conversion, removal, confiscation and/or disposal of any items of personal property, fixtures or other material(s) from privately-owned premises or real property situated within the City of Elmira by or on behalf of Defendant City of Elmira by or through any of the Defendants named in this action or any other officials, officers, employees and/or agents of said Defendant City, pursuant to or purportedly pursuant to any of the provisions of either of the two amended ordinances or amended ordinance provisions hereinbefore referred to, using as the appropriate measure of dam-

-41-

ages in this regard the fair market value of such items, fixtures or material(s) as of the date of their unlawful conversion, confiscation, removal and/or disposal; and refunding to any and all such class members any and all charges and costs imposed upon them or demanded and collected from them by the City under or by virtue of or under the purported authority of Section 22-7, whether for the removal of items of personal property from premises or the mowing or cutting of high grass or for any other supposed violation of any of the substantive provisions of Section 22-7;

[l] canceling, striking, invalidating and expunging any and all liens imposed or placed against the real property of any and all class members pursuant to Section 22-7, as amended, for charges imposed by the City of Elmira against such class members as a result of any violation or alleged violation of that section;

[m] issuance of a preliminary and subsequently permanent injunction enjoining and restraining Defendant City of Elmira and/or any of its officials, officers, employees and/or agents from seeking to enforce any of the provisions of either of the amended ordinances or amended ordinance sections hereinbefore referred to;

[n] that an order to show cause issue out of this Court, directing the Defendant City of Elmira and other Defendants, its employees, officials, officers and/ or agents to appear and show cause in and to this Court why a preliminary injunction pendent lite should not issue out of this Court enjoining them from enforcing any of the provisions of either of the amended ordinances or amended ordinance sections hereinbefore referred to, pending a hearing before this Court to determine whether a preliminary

-42-

or pendent lite injunction should justly and properly be issued and granted, providing

for this relief or similar or related equitable or affirmative relief or remedy;

[o] granting and awarding Plaintiff and the class members to be made

a part of and to join in this action prejudgment interest on any and all monetary dama-

ges, to be computed and calculated at the rate of nine percent per annum, as specified

in Section 5004 of the New York Civil Practice Law and Rules;

[p] awarding Plaintiff and the class members the costs and disbursements

of this action, including any and all reasonable attorney's fees which may reasonably or

necessarily be incurred at or after some subsequent point or stage of this action, pursuant

to 42 U.S.C. § 1988; and

[q] granting the Plaintiff and class members such additional and further

relief as may be equitable and proper to this Court.

Date: February 9, 2010

Signed,

Christopher M. Murphy
Plaintiff, appearing *pro se*
Residence and Post Office Address:
757 Linden Place
Elmira, New York 14901
Telephone: (607) 732-3681

-43-

### Sec. 22-4. Use of trapdoors.

No subway trapdoor, manhole, grate or shute of any kind having an entrance in any street, sidewalk or alley, or which is adjacent to any street, sidewalk or alley in the city, shall be open at any time except while being necessarily used for the purpose for which it was constructed, and during such time the same shall be surrounded by sufficient guardrails and warning lights to secure the public safety.

(Penal Ords. 1939, § 43.5)

### Sec. 22-5. Water conveyors leading to sidewalk to be kept clean.

The owner, lessee, occupant or person in control of any building in the city, shall, to protect any sidewalk adjacent to such building from any flow of water from such building, at all times keep and maintain in good repair all conductors, gutters, pipes, spouts and drains of every kind for receiving and conveying water from such buildings.

(Penal Ords. 1939, § 43.6)

### Sec. 22-6. Refuse not to be deposited in streets.

No person shall deposit, place or scatter ashes, leaves or wastepaper or other refuse of any kind in or upon any street, sidewalk or alley in the city; nor shall any person in or upon any such street, sidewalk or alley burn any leaves, wastepaper or refuse of any kind.

(Penal Ords. 1939, § 43.7)

Cross reference—Garbage, trash and refuse, Ch. 11.

### Sec. 22-7. Brush, briars, weeds, obstructions, debris, manure, rubbish, salvage materials or miscellaneous refuse to be destroyed.

(a) The owner, lessee, occupant, or person in control of any lot in the city shall keep such lot free from all brush, briars, weeds, obstructions, debris, manure, rubbish, salvage materials or miscellaneous refuse of any kind. If any such owner, lessee, occupant or person in control of any such lot shall fail to remove any such weeds or brush, briars, obstructions, manure, rubbish, salvage



EXHIBIT A

materials or miscellaneous refuse of any kind as aforesaid within forty-eight (48) hours after notice by the city so to do, the city may itself effect such removal and assess to the real property a charge per square yard at the current price, with a minimum charge of fifty dollars ($50.00) per single lot, said charges to become a lien on said real property to be added to the tax bill for said real property. Service of such notice may be made personally or by mail or by delivering such notice to a person of suitable age and discretion in any building upon any such parcel, or in the event of a vacant lot, by mailing the notice to the person and at the address shown on the latest tax assessment roll of said parcel.

(b) Notwithstanding any other local law or ordinance no person shall place, throw or deposit or cause to be placed, thrown or deposited any brush, briars, weeds, obstructions, debris, manure, rubbish, salvage materials, refuse, solid waste, recyclable material, hazardous waste or white goods, as defined in Local Law No. 1 of 1993, upon any street or upon any portion of a public right-of-way lying between the property line of any parcel adjacent to said right-of-way and the street line, except as otherwise permitted for solid waste collection purposes under Local Law No. 1 of 1993.

(c) The owner, lessee, occupant or person in control of any real property parcel in the city shall keep that portion of the public right-of-way immediately adjacent to said parcel and lying between the property line of said parcel and the street, which area is commonly referred to as the curb area, from any brush, briars, weeds, obstructions, debris, manure, rubbish, salvage materials, refuse, solid waste, recyclable material, hazardous waste or white goods, as defined in Local Law No. 1 of 1993. If the owner, lessee, occupant or person in control of any such parcel adjacent to the curb area shall fail to remove any such brush, briars, weeds, obstructions, debris, manure, rubbish, salvage materials, refuse, solid waste, recyclable material, hazardous waste or white goods, as defined in Local Law No. 1 of 1993, within forty-eight (48) hours after notice by the city so to do, the city may remove or cause to be removed any such item or items and assess to the real property parcel the cost of such removal with a minimum charge of fifty dollars ($50.00), any such charge to become a lien on such real property parcel, which lien shall be added to the tax bill for

such parcel. Service of such notice may be made personally or by mail or by delivering such notice to a person of suitable age and discretion in any building upon such parcel or, in the case of a vacant lot, by mailing the notice to the person and at the address as shown on the latest tax assessment roll for said parcel.

(d) Any person who fails to timely comply with the notice to remove, served in accordance with subsections (a) or (c) and by reason thereof the city undertakes such removal shall, in addition to the charge set forth in subsections (a) and (c), be liable for a fine of not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) upon the first violation within a calendar year; not less than one hundred dollars ($100.00), nor more than two hundred dollars ($200.00) upon the second violation within a calendar year; and no less than two hundred dollars ($200.00), nor more than four hundred dollars ($400.00) upon the third or more violations within a calendar year.

(Penal Ords. 1939, § 43.8; Ord. of 5-1-72, § 1; Ord. of 8-4-75, § 1; Ord. of 9-2-75, § 1; Ord. No. 90-285, § 1, 5-7-90; Ord. No. 93-339, § 1, 6-28-93)

Cross reference—Health and sanitation, Ch. 12.

### Sec. 22-8.  Electrified or barbed wire fences.

No person shall construct or maintain an electrified fence or a barbed wire fence, or a fence of which barbed wire is a part, except that strands of barbed wire may be used on the top of a fence of other material when such fence is at least six (6) feet in height. (Penal Ords. 1939, § 43.8(1))

### Sec. 22-9.  Construction of booths, etc.

No person shall erect or place, or cause to be erected or placed, upon any street, sidewalk or alley in the city, any stall or booth of any kind for the purpose of displaying, selling or offering for sale any goods, wares or merchandise, except that on holidays or other special occasions the mayor may by permit sanction the erection and use of such stalls or booths for limited periods of time. (Penal Ords. 1939, § 43.9)

Sec. 22-7. Junk, debris, high grass, brush, briars, and other miscellaneous refuse.

(a) Definitions. For the purpose of administering this section, the following terms or phrases shall have the meanings indicated herein:

(1) "High grass" shall mean any grass, weeds, or combination thereof, greater than six (6) inches in height.

(2) "Miscellaneous refuse" shall include, but not necessarily be limited to: junk, trash, litter, debris, refuse, solid waste, hazardous waste, garbage, recyclable materials, salvage materials, construction materials, and household mechanisms or appliances including, but not limited to: televisions, air conditioners, refrigerators, washers, dryers, stoves, inoperable lawn mowers and such other large and/or bulky items.

(i) For the purposes of this ordinance "miscellaneous refuse" shall not include fenced-in "compost piles" consisting solely of biodegradable plant material, which are located on a lot with the owner's permission.

(b) Regulation.

(1) Privately-owned lots. The owner, lessee or other person in control of any lot located wholly or partially within the city shall keep such lot free from the accumulation of high grass or miscellaneous refuse of any kind.

(2) Public Right-of-ways, streets, lots. Notwithstanding any other local law or ordinance, no person shall place, throw, or deposit, or cause to be placed, thrown, or deposited, any miscellaneous refuse or obstructions of any kind upon any street or any portion of a public right-of-way, or publicly owned lot, except as may otherwise be permitted for solid waste collection purposes under Local Law No. 1, as may be from time to time amended or superseded.

(3) Private duty over public right-of-ways. The owner, lessee, or other person in control of any real property parcel located wholly or partially within the city, shall keep that portion of any public right-of-way immediately abutting said parcel and lying between the property line of said parcel and the street, which area is commonly referred to as the curb area, free from the accumulation of high grass, miscellaneous refuse or obstructions of any kind.

(c) Abatement Procedures. If any owner, lessee or other person in control of any lot shall fail to remove or otherwise abate such high grass or miscellaneous refuse as above described, within forty-eight (48) hours after notice thereof is mailed or otherwise served by the city as hereinafter provided, the city may effect such removal or abatement of such high grass or miscellaneous refuse and thereafter assess to the real property a charge equal to the cost actually incurred by or on behalf of the city for labor, equipment, materials and any other costs necessary to effectuate such removal or abatement.

(1) Such charges shall be a lien on said real property and shall be added to the tax bill therefor.

EXHIBIT B



(2) Nothing herein shall be construed as requiring notice to the owner, lessee or other person in control of any such lot, if the high grass, miscellaneous refuse, or obstruction as above described, shall be deemed by the city to pose a possible risk to the health, safety or welfare of any person or animal, or a public nuisance.

(d) <u>Notice.</u> Notice to remove or otherwise abate such high grass, or miscellaneous refuse from a private lot, or high grass, miscellaneous refuse, or obstructions of any kind from an abutting public right-of-way, all as above described, may be made by mail, personal service, or by delivering such notice to a person of suitable age and discretion residing in any building located upon such lot or at the residence or principal place of business of the owner of said lot, or in the event of a vacant lot, by mailing the notice to the address and designee shown on the latest tax assessment roll of said parcel.

(1)    Nothing herein shall be construed to require that the notice as above described actually be received by said owner, lessee or other person in control of such lot in order for the city to effectuate the removal or abatement thereof and levy the costs therefor against the lot, or exercise any other legal right or privilege granted to the city herein or elsewhere by law.

(e)    <u>Multiple Notices Violation.</u> If any owner, lessee, or other person in control of any lot shall actually be cited as provided for in subdivision "(d)" hereof, for any violation of subdivision "(b)" hereof, more than three (3) times in the aggregate, during any consecutive twelve (12) month period, said person or persons shall be subject to the civil penalties for such violation or violations as set forth in subdivision "(f)" eof.

(1) Occurrences of such actual citations, wherein the City thereafter effects e removal or abatement of said high grass or miscellaneous refuse shall not constitute a olation of this subdivision.

(f) <u>Civil Penalties.</u> In the event the city undertakes to remove or abate high grass or miscellaneous refuse from any private lot, or high grass, miscellaneous refuse, or obstructions of any kind from an abutting public right-of-way; the owner, lessee or other person in control thereof who failed to comply with notice as above described (or in the event that no notice was actually sent or received, then solely the owner of said lot), and/or any other person who actually caused or permitted such high grass or miscellaneous refuse to exist on said private lot, or high grass, miscellaneous refuse or obstructions of any kind to exist on an abutting public right-of-way, shall be in violation of this section and shall be subject to the penalties herein provided, which penalties may be in addition to the costs associated with such removal or abatement.

(1) Upon the first violation within a three (3) year period the penalty shall be not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00), and upon the second violation within a three (3) year period the penalty shall be not less than three hundred dollars ($300.00) nor more than five hundred dollars ($500.00), and upon any subsequent violation within a three (3) year period the penalty shall be not less than one thousand dollars ($1,000.00) nor more than one thousand five hundred dollars ($1,500.00).

(g) In lieu of the civil penalties provided herein, the City may elect to enforce a violation of this section in accordance with section 1-7 of this Code of Ordinances.

5/22/ D.O. Ord No. 2000-095